## W. J. Wingo v. The State.

### No. 6196.  Decided April 13, 1921.

**1.—Incest—Reproduction of Testimony—Predicate.**

Where, upon trial of incest, the defendant objected to the reproduction of the testimony of a certain State's witness because a proper predicate had not been laid therefor, and the record on appeal showed that the appellant is sustained in this contention, the judgment must be reversed and the cause remanded. Following Ripley v. State, 58 Texas Crim. Rep., 489, and other cases.

**2.—Same—Evidence—Other Acts of Carnal Intercourse.**

Testimony as to other acts of carnal intercourse should not have been introduced by the State before there had been any denial of such incestuous relations, or a cross-examination of such a chartcter as to make other acts of intercourse admissible. Following Wingo v. State, 85 Texas Criminal Rep.. 118, and other cases.

Appeal from the District Court of Crosby. Tried below before the Honorable W. R. Spencer.

Appeal from a conviction of incest; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Gibson & Dalton,* for appellant.—On question of other acts of sexual intercourse: Bohannon v. State, 204 S. W. Rep., 1155.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was convicted of the crime of incest, and his punishment assessed at confinement in the penitentiary for a term of ten years.

This is the second appeal. The opinion upon the first appeal will be found reported in 85 Texas Crim. Rep., 118, 210 S. W. Rep., 547. It would not be entertaining or instructive to set out the facts further than they are reported in the case on the former appeal, and it will not be necessary to do so in the disposition of the case which it will be necessary for us to make; as the record is presented here.

The only bill of exceptions we care to discuss is the one presenting an alleged error on the part of the trial court in permitting the reproduction of the testimony of a witness, J. C. Woodall, who testified on the former trial, but who was absent from the second trial, from which this appeal is taken. After the State had placed upon the witness stand appellant's paramour, they then sought to reproduce the testimony of the witness Woodall as given upon a former trial. The testimony of this witness is the only testimony offered by the State which in any way directly corroborates the evidence of the accomplice paramour. We will not discuss the right of the State to reproduce the testimony of said witness if a proper predicate had been laid, as under the decisions of this court that is not an open question, and the writer is in accord with those opinions which hold that the testimony of a witness may be reproduced where, since such witness has testified, he has since died, or has removed beyond the limits of the State, or become insane, or is prevented from attending the trial through the acts of the accused. The only question for our review is as to the sufficiency of the predicate laid, and that is the only matter that will be discussed in this opinion. As a preliminary basis for laying the attempted predicate, the district attorney filed an affidavit setting out that the witness J. C. Woodall had testified on a former trial of this case, and that he now "resides out of the limits of this State, and that he cannot, after diligent inquiry, be found, or his whereabouts ascertained, and that he has been prevented from attending this court through the act or agency of defendant, and by the act or agency of others acting for the benefit of defendant." The State then introduced a subpœna for said witness, issued on the 15th day

of May, 1918, and which was served on the 16th day of May, 1918.
A sworn application for a subpœna for this same witness was then
introduced, showing its issuance on the 30th day of October, 1919.
This last subpœna was never served.  B. W. Mitchell, sheriff of
Crosby County, upon this issue, testified, that he had made efforts to
locate the witness since he had testified on the former trial; that he
had written to the sheriffs of Wichita, Eastland, Young and Erath
Counties requesting them to try and locate the witness, and had re-
ceived letters in reply to the effect that they could not find him.  The
district attorney testified that he had made every effort he knew how
to make to locate the witness, and had been informed that he had gone
to the oil fields, and that the district judge of Hale County had prom-
ised to keep a look-out for this witness and report his presence if he
showed up there.  The district attorney further testified that he had
made many inquiries in the oil field centers of Wichita Falls, Burk-
burnett, Stephensville, Breckenridge, and the oil fields in general, and
had been unable to get any trace of said witness.  The district at-
torney further testified that he did not know whether J. C. Woodall
was a resident of the State of Texas or not; that he did not know
whether he lived in the State or out; and that he did not know whether
he was living or dead, and that he did not know anything about his
physical or mental condition.  Henry Guess, a brother of the pros-
ecuting witness testified that he knew Woodall; that since the former
trial had made an investigation, trying to locate him; that he inquired
at Plainview of the Postmaster and found that Woodall had not
changed his address, nor had he given any forwarding address, and
that what mail came for him at that post office was either sent back to
the mailing office or held there.  He says that during his investigation
he became apprised of someone going to see Woodall after he testi-
fied on the former trial, and was led to believe that Wingo's brother-
in-law, and a lawyer who was employed in this case, had gone to
Plainview to see the witness Woodall.  On cross-examination the wit-
ness Guess said that he did not know, of his own knowledge, of any-
one going to Plainview to see Woodall; that he did not know where he
was, and did not know whether defendant had anything whatever to
do with the matter he had testified about; that he did not know whether
the witness was in Texas, or where he was.  The district attorney
testified that he made an affidavit, heretofore adverted to, but that he
did not know whether Woodall was a resident of this State or not;
did not know where his residence was; and did not, of his own
knowledge, know that the defendant, or anyone acting for him, had
ever made any attempt to prevent Woodall from attending court;
that he knew nothing of his condition, whether he was sick or well,
or of unsound mind; that he had made inquiries from all sources
that appeared proper ones to lead to the finding of said witness. such
as personal inquiries at his former whereabouts at Plainview, and in
the oil fields of Texas, and had had the sheriff take the matter up with

the sheriffs of other counties. The witness further stated that no one had ever stated to him that Woodall did not live in the State, or that he was dead, or of unsound mind, or that he was sick, and, so far as he knew, there had been no process issued for Woodall for a year.

The foregoing embraces practically all the testimony offered by the State in its attempt to lay a predicate for the reproduction of the testimony of the witness Woodall. Appellant, through his counsel, objected to the reproduction of the testimony for the following reasons. "Before the testimony of any witness, who had confronted defendant at one time, can be reproduced in the absence of such witness, the burden is upon the State to lay a proper predicate for such testimony by competent evidence, showing that the absent witness is either beyond the limits of the State, or is dead, or physically or mentally unable to attend court and testify, or that his absence had been procured by defendant or some person acting for him, for the purpose of depriving the State of the testimony of such witness, and neither of which facts necessary to lay a proper predicate for the reproduction of such testimony had been proved." Appellant's objections to the reproduction of the testimony was overruled, and appellant reserved his bill.

We are of the opinion that appellant's contention that no proper predicate was laid for the reproduction of the testimony of this witness is sound. When you take all of the testimony introduced for the purpose of laying a predicate and sum it up, it simply amounts to the fact that the witness Woodall was not present at the trial, and no one knew where he was, or why he was absent. There is no testimony from which the trial court, or this court, can conclude that he was out of the State, and only the remotest suspicion that would even suggest that anything had been done by the appellant, or with his knowledge, to prevent the witness from attending the trial. The State announced, knowing this witness was absent, thereby taking the chance of being able to prove a sufficient predicate to admit the reproduction of his testimony, knowing at the time that he was the only witness by whom the accomplice could be corroborated in such a way as to secure a conviction. So far as the record discloses, there was no effort on the part of the district attorney to have the case continued for the purpose of securing the attendance of Woodall.

It is unfortunate for the State, perhaps, that the whereabouts of the witness cannot be ascertained, and his presence secured, but the reproduction of the testimony of a witness is an exception to the general rule that the accused on trial must be confronted with his witnesses, and before the testimony of an absent witness can be reproduced, the parties offering to do so are require to place themselves within the rule, and establish a predicate, satisfactory to the court, showing that the witness comes within one of the classes which will permit the reproduction of his testimony. We are constrained to hold that the State wholly failed to do that in this instance, and that the

trial court committed an error in permitting the reproduction of the testimony, which will necessitate a reversal of this case. We do not review at length the cases upon this issue, but cite: Smith v. State, 48 Texas Crim. Rep., 65, 85 S. W. Rep., 1153; Pace v. State, 61 Texas Crim. Rep., 436, 135 S. W. Rep., 379; Ripley v. State, 58 Texas Crim. Rep., 489, 126 S. W. Rep., 586, and Hardin v. State, 57 Texas Chim. Rep., 401, 123 S. W. Rep., 613.

Other questions are raised by appellant in bills of exceptions, which we do not care to discuss, but in view of another trial, call the attention of the district attorney to the complaint made in one of the bills that evidence of other acts of incestuous intercourse were introduced in evidence on the direct-examination of the accomplice before there had been any denial of such incestuous relation, or a cross-examination of such a character as to make other acts of intercourse admissible. Wingo v. State, 85 Texas Crim. Rep., 118, 210 S. W. Rep., 547; Alexander v. State, 82 Texas Crim. Rep., 431, 199 S. W. Rep., 292; Bradshaw v. State, 82 Texas Crim. Rep., 351, 198 S. W. Rep., 942; Hollingsworth v. State, 80 Texas Crim. Rep., 291, 189 S. W. Rep., 488; Gross v. State, 61 Texas Crim. Rep., 166, 135 S. W. Rep., 373; Pridemore v. State, 59 Texas Crim. Rep., 563, 129 S. W. Rep., 1113; Skidmore v. State, 57 Texas Crim. Rep., 497, 123 S. W. Rep., 1129.

The judgment of the trial court must be reversed and the cause remanded.

*Reversed and remanded.*